The issue in this case is whether Home Depot gets to control the messages communicated to Home Depot's customers on Home Depot aprons worn by Home Depot employees who are working as Home Depot spokespeople in Home Depot stores. The answer to that question is, of course, yes. The NLRA and the First Amendment both protect Home Depot's right not to host or disseminate controversial political slogans on its employee uniforms. We should win this case for any of three reasons. One, the First Amendment's ban on compelled speech. Two, the NLRA's business justification or special circumstances rule. And three, because Bo's BLM display wasn't protected by Section 7 in the first place. On the special circumstances point, I mean, doesn't it matter that Home Depot allows certain sorts of political commentary on the uniforms, right? There are some pins that are allowed. I'm thinking here, I think the record reflects the DEI. And I think the argument was made that that means that the special circumstances exception does not apply to you. What's your response to that particular issue? Sure. Let me say something about what we think the rule is and then answer the question directly. We think the best articulation, the most correct articulation of the special circumstances rule or the business justification rule, as we call it, based on the Darlington, was set forth by Justice Kavanaugh in his opinion for the D.C. Circuit in the Southern New England Telephone Company case. And there, Justice Kavanaugh wrote for the Court that the exception allows the employer to prohibit employees from displaying messages that the employer reasonably believes will harm its relationship with customers or its public image. And here, Home Depot has made the judgment that there are certain types of messages that are controversial in a way that threaten the relationship with its customers, that change its public image, that unreasonably raise the risk of incidents in the stores, and that create the potential for dissension among employees. And here, Home Depot made the determination that the BLM message, especially at a very contentious time in Minnesota history, was going to be controversial. That was reasonable. Forty-two percent of the country at the time disagreed with the BLM message. There were incidents at other types of stores, Starbucks, Target, et cetera, in which BLM had sparked incidents in stores. And the record is replete with instances in which the BLM message was controversial among employees. None of those things apply to the LGBTQ message, Judge Kobach, that you referenced. There was no reason to think, you know, I think 90 percent of the country believes in equal rights for gays and lesbians. There was no reason to think that that particular message was going to create conflict, either in Home Depot stores or in other stores generally. And Home Depot has the right, under the NLRA, to make a reasonable judgment that some types of messages are going to create a greater risk of offending customers. I think it's really important to look at what the Board says on the alienation of customers sort of component of the business justification rule. And they're very clear about this. On pages 830 to 831, the Board takes the completely unreasonable position that trying not to offend your own customers is not a legitimate business justification for purposes of the business justification rule. I can't even understand that rationale. I cannot think of something that is more justified if you run a business than the desire to avoid offending and alienating your own customers. I mean, it's not even business school 101. It's before that. You know, the customer is always right. That's the idea. You don't want to offend your customers. It's common sense. And so the Board's position on this is, as a matter of law, this is their argument, that alienating customers is not a legitimate consideration. That can't be correct. The other argument that the Board makes with respect to the business justification rule or special circumstances touches on the point that you raised, which is they say whenever there's personalization of an employee uniform at all, that means you lose the ability as an employer to say that you're trying to cultivate a public image in a way that triggers the defense. That's wrong. The personalization issue that the Board might be right in circumstances where the interest that the employer is asserting is one in consistency and uniformity. If the employer is saying, we need everyone to be dressed the same, but then at the same time, it's allowing a bunch of employees to customize and personalize their uniforms, then it's obviously acting inconsistent with its own asserted interest. But that's not the interest that Home Depot is asserting here. Home Depot has a policy that's trying to keep the stores apolitical. We want people to come in and think about buying hammers and buying drywall, not to think about controversial political slogans. So the interest is in keeping things apolitical and not having messages that are going to inflame customers and that are going to alienate certain customers and going to turn the aisles of Home Depot into an episode of crossfire or a political rally. And it's a perfectly legitimate, reasonable thing for Home Depot to want to do. And the NLRA has to create that wiggle room, has to protect Home Depot's right to do that. The other side's argument, I think, implies that if Home Depot, if a Home Depot employee wanted to protest working conditions by spray painting Home Depot's billboard outside its store with messages that were purely political, you know, abortion is health care. Home Depot should apply, should protect abortion rights for everyone and cover them in their insurance. That that is something that the Home Depot, as the employer, would not be able to ban on the grounds that Home Depot wants to avoid alienating pro-life customers. With all respect, that can't be right. That can't be the law. This business justification rule was established by the Supreme Court in 1965 in Darlington. It's been applied in many cases since then, and it provides a very reasonable, sensible way to resolve this case in Home Depot's favor. But there are other ways to resolve this case in Home Depot's favor as well. And I'd like to touch on the two other major obstacles that the Board has to prevail in here. If, for some reason, you disagree with us on our business justification rule, perhaps just COVID, because you think that they were not fine-tuned enough and they had to treat LGBTQ messages the same way as BLM, then we just go into the First Amendment. Because the First Amendment does not require Home Depot to be consistent. Home Depot is allowed to be inconsistent. It's allowed to endorse messages that judges or that government officials might think are in conflict with one another. The Supreme Court has said that over and over again in the Net Choice case, in the Boy Scouts v. Dale case. It's made clear that speakers are protected under the First Amendment, even when the messages that they put forward are eclectic, intellectually inconsistent, conflicting with one another. And that's just what freedom is about. Speakers get to choose what they say, even if a government official thinks that the speaker isn't making a lot of sense. Here, we think, of course, Home Depot was making sense. But even if you disagree with that, even if you disagree with the fine-grained choices Home Depot was making on its apron policy, that fundamental choice is an expressive choice. It's protected by the First Amendment. I think it's really important to look at what the Board says about the First Amendment argument. Because what they say, I think, should be offensive to people who care about the First Amendment. The Board's basic position in this case has been, from the very beginning, to brush aside the First Amendment to essentially pretend that there is an exception to the First Amendment for the NLRB or for cases implicating the NLRA. At no stage in this case has the Board seriously considered the very significant and weighty First Amendment interest that Home Depot has in setting forth its apron policy, which reflects its own expressive choices. So here, the Board's only argument, this is on page 48. I'm curious, in light of this argument, I have to ask, does the failure of your briefs to cite our in-bank decision in Mixland mean that you think it's irrelevant? I'm sorry, the... Mixland versus NLRB. I haven't looked... The Jimmy Johns case. I'm not familiar with that case, Your Honor. I have to look at it. I don't think... Okay. It doesn't reflect you think it's irrelevant. It reflects that I need to take a closer look. Your Honor, I don't believe that the Board cited that case against us on this point. No, no. Okay. I think... Well, they wouldn't, because we held that the Board ignored Jefferson's standard. Well, there you go. And I think that if that's what it says, Your Honor, then I think that that was an error, and I think it's a similar kind of error here, because what the Board is essentially asking you to do is ignore the First Amendment requirements that apply. And what they're saying is, their whole... The linchpin of their First Amendment response is that Home Depot has no First Amendment rights that are implicated here at all. No First Amendment rights implicated here at all. That's what they say at page 48 of their brief. How can that possibly be true? We have Home Depot aprons that operate essentially as billboards. It's Home Depot's method of communicating with its own customers. Home Depot has its own speech, the values wheel, and other speech directly on the apron. And then it has an apron policy that sets forth certain types of personalized, customized speech that Home Depot thinks will further the communications and the messages it wants to send to its customers. And then it has other aspects of the policy that say, we don't want you to communicate these other messages to the customers. And the Board thinks that this policy, which clearly reflects Home Depot's expression, just doesn't implicate a First Amendment interest at all. If you want to just wish away the First Amendment, then sure. You know, I think if that's the Board's perspective, they can win the case if the First Amendment didn't exist. They say there's decades of precedent rejecting our position. Decades of precedent that doesn't mention the First Amendment, that precedent is not binding in the First Amendment context. My friend on the other side, Mr. Heller, signed a brief in the Supreme Court saying that no court had ever addressed this issue. If no court has ever addressed this issue, then how can there be precedent for closing our argument? So this argument doesn't work either. I think if you want to resolve the case on First Amendment grounds, there are two basic lines of cases you could draw on. The most straightforward, it seems to me, is the Janus case, which implicates some of the general issues that you all were talking about in the first argument. Janus says that when an employee engages in speech that is part of the employee's job duties, the employee's words are really the words of the employer. So here, when Bo puts the BLM message on the Home Depot apron that is the vehicle for Home Depot expressing messages to its customers, and when Bo says in Bo's testimony at page 43 that the reason Bo is doing this is because Bo wants to communicate to customers that it's a good idea to come and approach him, Bo, and make himself more approachable, Bo is agreeing that the speech is happening as part of Bo's job duties. And in that case, Janus makes absolutely clear that speech is Home Depot's speech. And if the government, in the guise of the NLRB, is coming in and saying Home Depot needs to, instead of saying what Home Depot wants, Home Depot needs to accommodate a message that Home Depot doesn't want on the apron, then that is compelled speech. Even if you don't agree with that line of cases, we also have the Net Choice and Hurley line of cases, which make clear that when there's an entity that's compiling or curating or content moderating third-party speech, that even though the speech that's being affected might not be the direct speech of the entity that's doing the compilation or the curating or the moderating, that the overall compilation has First Amendment value, and the decisions that, say, a social media platform makes when moderating Twitter or Facebook, those decisions have First Amendment expressive value and are protected by the First Amendment. If that's protected, then this has got to be protected when the speech is so much closer to what Home Depot itself wants. I'll just say very quickly on the Section 7 issues, we don't think there's evidence in the record that supports the idea that this was concerted activity, that this was activity for mutual aid or protection. We think there are legal errors in the way that the Board has conceived of both concertedness, you know, logical outgrowth, cannot mean just correlation in time. It's got to mean something akin to causation. And we think that there's a nexus requirement that applies to mutual aid and protection that's just not satisfied here. So for all these reasons, we ask you to set aside the Board's order. Thank you, Your Honors. Thank you. Mr. Heller? Good morning. May it please the Court, Joel Heller for the National Labor Relations Board. It is a longstanding and undisputed principle that the NLRA protects employees' right to jointly protest racial hostility in their workplace and to display insignia or adornments that relate to working conditions. Substantial evidence supports the Board's finding that Karo Boe exercised those rights when they refused to remove the letters BLM from their work apron. The Board's decision in this case was premised on the particular facts of this particular workplace. It was not a broad decision on what Home Depot calls political messaging or even about Black Lives Matter. The Board found under the record evidence here that Boe was engaged in concerted activity for mutual aid and protection. As to concertedness, it is uncontested that employees at this store, at this particular Home Depot location, for months had been addressing management about racial hostility from a fellow employee against coworkers and against customers, and that a Black History Month display had been vandalized on multiple occasions in the break room in this store. And the Board found that Boe's continued display of the BLM was a logical outgrowth of that earlier activity, which is a theory of concertedness that this Court has approved of in the St. Paul Park case. The discussion between Belford and Boe in which Boe was told to remove BLM was a 90-minute conversation in which all of these topics had been brought up, the racial hostility by GUM, the coworker, the vandalization of the Black History Month display. And on multiple occasions, Boe mentioned how the connection between those earlier incidents and their refusal to remove BLM, they said, this is not, we've been talking about this for six months, nothing has happened as far as I can see, and that was the reason they were not going to take BLM off of their apron. Now, Home Depot disputes the import of some of these statements, but ultimately that's kind of asking the Court to reweigh the evidence on appeal, which is not something this Court generally does. And this is related, not in some tangential way, to those other instances. The second vandalization of the Black History Month display occurred the day before this meeting in which Boe was told to remove the letters and refused to do so. Several other meetings had happened in the weeks before this one in which employees concertedly came to management to complain about this racial hostility in the workplace. The refusal to remove BLM was also for mutual aid and protection because, again, it was for the purposes of serving, furthering employees' interests as employees. They were, there was, again, it was uncontested that this, these six months of previous activity by employees was for mutual aid and protection, pointing out the racial hostility in the store, which affected individual employees, and also created additional work for them in that they had to essentially protect the customers from this other person who was treating them unfairly based upon their race. So the Board found there was a direct relationship between the refusal to take BLM off the apron and the racial hostility that was going on that affected employees as employees. Of course, BLM has a meaning outside of the workplace. I'm very concerned procedurally here by the General Counsel making this a, the display, the unfair labor practice. And since that theory kind of blew up, the Board turns it into, well, this is really, this is a removal case. It seems to me that, A, the issues are different, and B, the analysis is probably different. Why, why was, why was the Board's after-the-fact theory preserved? So you're making the distinction between whether, when Bo initially wrote BLM and when, right. So there was some litigation about that, a due process litigation on that front. Home Depot doesn't raise that on appeal. They're not challenging the Board's decision that this was not a due process issue to adopt this new theory of violation. It's not due process, but it's different. There's factual differences, yes. The legitimacy or reasonableness of the employer's action in the NLRA context, leaving aside the First Amendment and so forth, it's different. The removal can come after reaction of customers and other employees is observed. The display, no, the display is, that's our apron. You can't do that. Seems to me they're very different cases, and I'm not sure the Board appreciated or certainly discussed that. Well, the difference. The dissenting member did. The difference, certainly there's a difference in timing, so the Board would have to show that the actions in February were concerted and were mutual aid of protection, and not just whether the, whether it was initially, and the Board grappled with that, and they said, well, actually, yes, it is the case that. I think the dissenter didn't think they did grapple with it. Well, the dissent lost. No, but the dissenter said they're deciding this on an issue that wasn't really raised by the General Counsel, and that's not right. Why isn't the dissenter sound? Well, again, I don't see that as an argument Home Depot is making on appeal. They're making only the temporal argument. They say, well, we're not limited to that. I mean, but the briefs talk, in a sense, past each other on that particular point, don't they? I mean, there are times in Home Depot's brief, as I recall, that it's talking about the placement of the BLM on the apron, whereas the Board's brief often talks about the refusal to remove. And so, I mean, that reality, you know, exists today. When I was reading the briefs, at least, I noticed the same thing Judge Loken did. So let me put it this way. So the violation found was that they ordered, Home Depot ordered Boe to remove BLM from that apron. When did they remove, when did they order Boe to remove it from the apron? In February 2021. So the relevant time period to look at is February 2021. Are they telling... Oh, you can say that. That's just, you're just making it up. When was the display? August of 20? That's when they initially wrote BLM on the apron was in August of 2020. When they were told to remove it and said, I'm not going to remove it, was in February 2021. So that was the violation that the Board, that was alleged and that the Board found. Yeah, the removal. It wasn't the violation that was charged. The display was the violation charged. Well, the Board gets into why this was covered by the removal was covered by the complaint. And again, that's not something Home Depot was challenging. So that is in the Board's decision. It explains why the language of the complaint covers that theory of the violation. We're not allowed to agree with the dissenter on that. Give me an authority that we can't. Well, I guess I won't say that you can't, but generally the Court will not... It will not entertain issues that are not raised by a party. Except we do it all the time. I'm not saying you can't do it. As a prudential matter, I guess I would say. But if you're looking at that, the analysis is in the Board's decision. We didn't brief it because it wasn't challenged. But you can read for yourself the Board's decision explaining why this was covered by the complaint. But it seems to me, and I haven't read the hearing transcript, it seems to me that the justification for removal can be quite stronger than the justification for the initial display, prohibiting the initial display. It could be, and that gets into the special circumstances test. And the whole Black Lives Matters at this point in time in this metropolitan area. It seems to me that's exactly what I think the dissenter was getting at. And that is all relevant to the special circumstances test because it is a contextual test. You look at what was going on outside the store. Yes, we don't dispute that. You also have to look at what was going on in the store. And this history... Okay, so you're agreeing that for special circumstances purposes we look at the date of removal. Yes, February 2021. Even if Home Depot should have allowed the display. That's correct. They didn't learn about it until February 2021. When they learned about it, there was a lot more chaos and bedlam in the community over this issue. I'm not sure that's true. My point is just the timing matter. You're more aware of what was going on than I was not here in Minneapolis. The killing of George Floyd was in June of 2020, and the removal was in February of 2020. So that predated both the initial display and the refusal to remove the display. Much of the aftermath continued. It continued, yes. Don't dispute that. For all purposes, we agree that the relevant date is February 2021. So yes, if there had been evidence that would support a special circumstances defense that was not available in August 2020 but became available, we agree that that is relevant. However, there is not such evidence in the record. Special circumstances is Home Depot's burden to show. It's an affirmative defense. This Court said that in the Walmart stores case. This Court described the special circumstances defense in the Walmart decision. There has to be evidence. They make several arguments. There's the public image. There's the employee safety, employee dissent, which maybe is getting to what you were talking about, Judge Loken. Of course, I can't stand up here and say that no one in Minneapolis in February 2021 was going to think that no one would be upset about BLM at that point. I can't say that. But it's their burden to prove that there was non-speculative, non-subjective evidence that there was going to be some kind of, or there was some kind of disruption in this store in order to come forward on their special circumstances test. And again, I'm not saying there has to be actual evidence of harm. We don't have to show. We're not saying they had to show fistfights in the flooring department. But they have to come forward with evidence that is neither speculative nor subjective. And they didn't do that. They came forward with a few instances a thousand miles away in California, at a Starbucks in New York, at a Home Depot store several years ago in New York. And there was some evidence about other employees speaking generally. It was kind of hearsay evidence that they were concerned about Black Lives Matter, but they were not responding to anything about Bo's display or the other employees' display of BLM on their work aprons at that point. There's not the evidence put forward that they would have to put forward to make the special circumstances test. What nature, what evidence, I mean, what is that burden that they bear? The burdens on Home Depot, I mean, what do they have to show in order to get the special circumstances? So I think it depends what kind of special circumstances you're arguing we're talking about. Are we still talking about the kind of dissension or offense to customers? My colleague on the other side suggested it was, you know, you just don't — the customer is always right. I mean, you've got people that are coming into the store who would disagree with the message and that that's just kind of a fundamental proposition of business that they're entitled to take into consideration. That may not be the extent of the — the full extent of the argument, but is that sufficient? Well, customer is always right might be Business School 101, but it's not law. It is not the — the NLRA provides rights to employees, and this right to display insignia on your — or adornments on your uniform, on your clothing, that has been recognized by the Supreme Court in Republic Aviation, by this Court on multiple occasions. So that cannot be ignored. I mean, obviously, the Home Depot and employers think that they know what is best for their business, and I'm not saying that they don't, but that's not really the issue. The Supreme Court in Beth Israel talked about it's not surprising that an employer's assessment of the need for a particular practice might overstate — overcompensate its goals and give too little weight to employee organizational interests. So I think that's going on — what's going on here. We — so employer interests are not the only one at stake, I guess, is my broader point here. You have to look at the rights granted to employees as well and recognized by the courts. So what they have to show, they have to show that there is — again, I apologize for repeating myself, but it's — it has to be nonspeculative. Of what, though? That there might be — so employees coming in — sorry, customers coming in and — and I guess being some kind of danger. There's no evidence here that anyone — It has to be danger? No, it doesn't have to be danger. I guess I don't want to overstate that. There was no evidence in this case of customer complaints. I think it's that there was testimony at — if I may, JA 328, where a manager was talking about how they had received no complaints from customers about employees wearing BLM, even though they had been doing so for six months at this point. And I think that's important. So we're not — right, they don't have to show customers are going to fight employees, but they haven't even shown customers were upset about this particular display. And again, maybe they were. I can't say for sure that no one was upset by this display, but it's Home Depot's burden. And, of course, this also applies to the union context. There are certainly customers who don't like unions, and that doesn't mean an employer can stop its employees from saying, you know, unionize or other things related to terms and conditions of employment, higher wages, what have you. So that can't be alone enough. So I guess in my little bit of time left, there's been a lot of discussion in the briefs about the First Amendment issues, so I won't say too much about it, but just maybe two broad points, is that there is this long-established right by the Supreme Court that employees have the right to wear insignia or adornments. And, of course, the First Amendment existed in 1945 when Republic Aviation was decided. There was not specifically — there was no First Amendment analysis in that case, but that doesn't mean it's not precedent. You can't overturn precedent just because someone later comes up with a new argument. So I think you have to keep in mind the existing precedent on this issue. One last point. In the First Amendment — if I may. In the First Amendment context — You said Thomas. I didn't catch what you — I apologize. Just in general what I just said? I didn't understand what your First Amendment — My first point is — I mean, I appreciate you're getting to it late, but I didn't understand the Republic Aviation. Okay. So Republic Aviation recognized an employee right to wear insignia related to working conditions in the workplace. So that is not a — there was not a First Amendment analysis in that case. The employer was making kind of similar arguments to what Home Depot now makes. They say we shouldn't have to wear — shouldn't have to allow these employees to wear union steward pins because people are going to think we support the union. It's similar even if it was not explicitly made as a First Amendment argument, and the Court rejected that argument. And so coming forward and saying, well, this insignia right is foreclosed or in tension with the First Amendment, you can't — you can't essentially overrule this idea of Republic Aviation that this Court has applied in other cases — Wal-Mart, Cintas, whatever — just because there's now a new argument against that theory. And just generally, First Amendment cases are — the Supreme Court has counseled are kind of specific to their factual circumstances. First Amendment cases, quote, are limited by the particular facts before us and, quote, counsel relying on limited principles that sweep no more broadly than the appropriate context of the incident case. That was Snyder v. Phelps. And so I — any — their First Amendment arguments to get where they want would require expanding upon the existing precedent in a new context. That is what the Court counsels against. Thank you, Your Honors. Thank you. Thank you, Your Honors. Just a couple points on each of the three obstacles that I think the Board faces here. First, on special circumstances, my friend on the other side said, you know, the customer isn't right, oh, it isn't the law. Let me tell you what the law is. Here's the law as announced by the D.C. Circuit in Justice Kavanaugh's opinion. A company may lawfully prohibit its employees from displaying messages on the job that the company reasonably believes may harm its relationship with its customers or its public image. How about a pro-union message if that conflicts with Home Depot? So you have a company that's in a fight with a union. The message, I assume, would conflict at that point, right? I mean, is there a carve out there, or how do we deal with the argument your friend ended with? Yeah, so I think, well, first of all, I think there are two different modes of analysis. One is the statutory analysis under the business justification rule. The other is the First Amendment analysis. With respect to legitimate business justification, Home Depot does not believe that union pins or insignia or messages conflict. What if a company did? Would that change? If a company did, then I think it would turn on, as all of these cases that the other side is citing expressly recognize, even when you're talking about union messages, including Justice Kavanaugh's opinion, which involved a union message, even when you're talking about that, you still have a special circumstances exception that has to look in a fact-bound, case-specific way as to whether the particular display at issue actually interferes with these legitimate business objectives like alienating your customers. And I think in the Fabrotech case from this Court, the Court was very nuanced and said that there are a bunch of union messages that flunk that test under the special circumstances rule. So I just think with respect to special circumstances, the rule has to be that alienating customers is a legitimate justification. The other side, my friend Mr. Heller did not contest that that was the basis of the Board's ruling. It's contrary view that alienating customers is not a legitimate basis as a matter of law for invoking special circumstances. On the facts, I think Justice Kavanaugh is again informative. He says at the beginning of his opinion for the D.C. Circuit, common sense sometimes matters in resolving legal disputes. I think it's common sense that the BLM message, especially in this time and place in Minnesota history, had significant potential to be divisive and to alienate customers. That's borne out by the polling data. It's also borne out by the record in this case. I don't have time to go through everything, but I would just point the Court to pages 145, 195 to 196, 203, 225, 281, all reflecting tough conversations in the workplace where someone was talking about Black Lives Matter and other people wanted to, you know, assert Blue Lives Matter or Thin Blue Line or All Lives Matter as counter messages. Boe, in Boe's own testimony, said that when a manager invoked the phrase All Lives Matter in response to Black Lives Matter, that Boe completely shut down and had to leave the conversation, which is exactly the kind of employee dissension that having these controversial slogans in the workplace is going to, you know, create. That's why the special circumstances rule is in place. If I could take one minute more, or would you prefer that I sit down?  Half a minute. So on Section 7, my friend spent most of his time addressing Section 7. We think it's an objective test, but even if you think it's subjective and it's worth looking at closely at what Boe said, the best place to look is Boe's sworn testimony when specifically asked, both by the Board and by us, why was BLM on the apron. It's pages 43 to 44, pages 212 to 213. Boe was very clear, did not invoke a workplace condition reason. Boe was talking about general racial solidarity, racial justice, and a desire to encourage customers to come talk to Boe in the workplace. We ask you to reject the Board's arguments, reject the idea that the First Amendment doesn't apply, reject the idea that precedent that didn't involve the First Amendment somehow forecloses our First Amendment arguments. This order should be set aside. Thank you, Your Honors. Thank you, Counsel. The case has been well briefed and argued. Interesting underlying situation and legal issues, so we'll take it under advisement. The argument's been helpful. The Court will be in recess for about 10 minutes. Thank you.